William Merl STEPHENSON, Respondent/Appellant,

v.

FIRST MISSOURI CORPORATION, Appellant/Respondent.

MID–CONTINENT FINANCIAL SERVICES, INC., Respondent/Appellant,

v.

FIRST MISSOURI CORPORATION, Appellant/Respondent.

No. WD 46707.

Missouri Court of Appeals, Western District.

July 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

Application to Transfer Denied Oct. 26, 1993.

Ralph Max Humphreys, Jefferson City, for respondent/appellant.

Thomas Michael Schneider, Columbia, for respondent/appellant.

J. Brian Griffith, Columbia, for appellant/respondent.

Before BERREY, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

This appeal arises out of several disputes regarding easements burdening certain commercial real estate, originally owned by appellant-defendant First Missouri Corporation ("FMC"). The real estate in question is located in Boone County, Missouri and includes two tracts of land, referred to as Tract A and Tract B. A statement of the facts in the light most favorable to the court's decision is as follows.

FMC conveyed Tract B to plaintiff William Merl Stephenson and his spouse ("Stephenson") by general warranty deed about December 31, 1982. Prior to purchasing the property, Al Brady, a realtor representing FMC, showed Mr. Stephenson the property lines and a survey (Grundler survey) from FMCs files indicating a 60' × 60' entryway easement access and a 20' driveway easement. This survey was not recorded. Mr.

Stephenson visually inspected the property and observed an entryway and a driveway. These easements were not conveyed in the warranty deed by FMC. In fact, according to the real estate records of Boone County, Missouri, the two easements did not exist. These records show that the easements had been released by a quit claim deed on June 2, 1982. As a result, Tract B was landlocked. However, Stephenson and others continuously used the entryway as a means of ingress and egress.

In 1984, FMC became aware of the easement problem leaving Tract B landlocked and could have conveyed the easements to Stephenson since it still owned the remaining property to the north (Tract A). However, FMC refused to convey these easements. Instead, FMC offered to convey the 60' × 60' easement to Stephenson in return for the 20' easement from Stephensons property. Stephenson refused FMCs offer, claiming he had already bargained and paid for the 60' × 60' easement. The easements were not conveyed. Without the 60' × 60' easement, there was no legal access to the property and it was conceded that the property was not marketable.

Tract A is located immediately north and adjacent to Tract B. In June 1985, FMC sold the remainder of the commercial tract, Tract A, by general warranty deed to Mid–Continent Financial Services, Inc. ("Mid–Continent") without informing Mid–Continent of the easement dispute. The trial court found that before the sale of Tract A, Mid–Continent made FMC aware of its concern about the 20' driveway easement shown on the FMC survey. Mid–Continent was interested in expanding the existing building to the south where the driveway easement was shown and, accordingly, wanted to make sure that the easement was not in existence. In May 1985, a month before closing, FMC delivered an affidavit signed by Paul Johnson, FMCs CEO, to Mid–Continent stating that FMC was not aware of any claims to the driveway easement and FMCs warranty deed conveying Tract A specifically represented that the driveway easement did not exist. Also, this warranty deed did not men-

tion the 60' × 60%2xc entryway easement burdening Tract A and benefitting Tract B.

In 1988, Stephenson asserted claims against FMC and Mid–Continent. Stephensons claim against Mid–Continent concerned the right to use the 20' driveway easement which ran east to west across Tracts A and B. In May 1991, in connection with a counterclaim, FMC filed another affidavit signed by Paul Johnson stating that in December 1982 when FMC sold Tract B to Stephenson, FMC thought the east-west driveway easement did exist and FMC intended to convey the driveway easement to Stephenson at that time. Although FMC contends that each affidavit refers to a different east-west driveway easement, the trial court found that Paul Johnson's 1991 affidavit directly contradicted his 1985 affidavit concerning his lack of knowledge of any claim to the driveway easement.

As a result of FMC's sale of Tract A, Mid–Continent also raises several claims against FMC. On January 5, 1988, Mid–Continent leased Tract A to ContactsThe Bar, Inc. ("Contacts"). The lease was long term and contained an option to purchase. In the Spring of 1988, prescriptive easements in the northwest corner of Tract A were asserted by Bill Schulz and Byron Stover. Contacts then repudiated the lease because Mid–Continent failed to perform certain repairs and because the prescriptive easements precluded it from exercising the option to purchase the full property. Contacts made claims totalling $238,000 of which $5,000 to $10,000 concerned maintenance and repair (for which FMC has no responsibility). On May 9, 1988, Mid–Continent made a formal demand that FMC defend these claims. FMC was aware of the Contacts suit, that it involved adverse easement claims by Schulz and Stover, and never notified Mid–Continent of any defenses to these claims.

In late summer of 1988, Mid–Continent and FMC entered into settlement negotiations regarding the Contacts claim. There is a dispute as to whether a settlement was "reached" or "closed" as a result of these negotiations. However, nearly a year later, Mid–Continent contacted FMC about closing the "1988 settlement," which FMC declined

to do. Mid–Continent did settle the Contacts suit for $27,500. Mid–Continent also settled the northwest corner claims with Schulz and Stover by granting an ingress and egress easement over the south half of the corner in exchange for quit-claim deeds vacating the prescriptive easements on the north half. Schulz and Stover also gave up their parking, loading and unloading easement rights on the south half, retaining only access rights.

In a bench-tried case, the trial court found that the 60' × 60' entryway easement and the 20' driveway easement did not exist and awarded Stephenson $30,000 in damages against FMC. Stephenson appeals this decision. The trial court also found in favor of Mid–Continent against FMC holding that FMC had ample opportunity to defend and intervene in any negotiations or litigation regarding the adverse easement claims, that FMC breached its deed of warranties to Mid–Continent, and that FMC was liable for all collateral money damages. Mid–Continent was awarded $72,945.70 in damages. FMC and Mid–Continent have appealed from these various orders.

FMC appeals from the trial court's rulings that (1) Stephenson had proved the essential elements of fraud; (2) that FMC had breached its deed warranties to Mid–Continent; and (3) that the fair market value of the property at issue was not excessive. In its cross-appeal, Mid–Continent claims that the trial court erred by declining to award Mid–Continent punitive damages, attorneys fees, and prejudgment interest. Stephenson also appeals the trial court's award of $30,000 in damages due to the reduction in the value of the property because of the non-conveyance of the easements, when the evidence supported a range of $77,500 to $82,500.

Being a court tried case, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *Id.* at 32. In applying this standard, this court has stated: "[W]e give the prevailing party the benefit of all favorable evidence and reasonable infer-

ences to be drawn therefrom, disregarding all evidence to the contrary." *Lisec v. Coy*, 793 S.W.2d 173, 176 (Mo.App.1990) (*quoting In re Marriage of West*, 689 S.W.2d 814, 815 (Mo.App.1985)). Furthermore, deference is given to the trial court even if the evidence could support a different conclusion. *Id.*

■ Stephenson claimed they were defrauded by FMCs failure to convey the 60' × 60' entryway and the 20' driveway easements. In response, FMC argues that the easements had been released and therefore, there was no evidence to support an intentional misrepresentation. Additionally, FMC maintains that Stephenson made no attempt to investigate the real estate records regarding the easements, which would have shown there were no easements. Consequently, Stephenson's reliance on the real estate agent's statement was unreasonable.

■ Stephenson's cause of action in fraud "must be based on false representations of the seller of material facts leading up to the sale, with the seller's knowledge of their falsity and with an intention that said representations be believed and acted upon by the buyer, coupled with the buyer's ignorance of their falsity and his action upon said representations to his resulting damage." *Ash v. Wiley*, 46 S.W.2d 897, 899 (Mo.App.1932). The evidence on this point was that FMC's CEO testified at trial that a Mr. Grundler, a surveyor, was hired to survey this tract of land owned by FMC, that he furnished the survey to FMC's realtors to show perspective purchasers, that he realized such purchasers would be looking at the survey to determine property lines and easements, and that prospective purchasers would rely on the survey in purchasing the property. At the closing of the transaction, FMC's CEO told Mr. Stephenson that Tract B had access through the 60' × 60' entryway easement and the 20' driveway easement.

■ FMC defends its position arguing Stephenson still had a duty to inspect the records and search for any defect in the title. FMC cites *Whittlesey* for the proposition that "the courts will not protect those who, with full opportunity to do so, will not protect themselves." *Whittlesey v. Spence*, 439 S.W.2d 195, 199 (Mo.App.1969). This argument is consistent with the general rules which provides that equitable relief is unavailable for fraudulent representations where the parties deal at arms length, or a party relies on representations that would arouse the suspicion of one with ordinary prudence, or neglects means of information easily discoverable. However, this rule is not applicable where a distinct and specific representation is made to be acted upon for the purpose of inducing action and which has induced action. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75, 82 (Mo.1967).

FMC made a specific representation when it showed Mr. Stephenson the survey and told him the easements existed. Contrary to FMCs arguments, such a representation did not require Stephenson to examine the land records to verify whether or not the representation was true or false. *Buzby v. Cary*, 30 S.W.2d 171, 174 (Mo.App.1930). In *Buzby*, this court stated:

> It is the law that a plaintiff may maintain a suit for fraud if he relied upon a misrepresentation of a material fact, though the truth could have been ascertained by an examination of the public records, providing his reliance upon the representation caused him to fail to consult the records.

*Id.*

The trial court had sufficient evidence before it to make a finding that Stephenson had a right to rely upon the survey and representations of FMC and was damaged by such reliance. Point denied.

■ FMCs next complaint is against Mid–Continent maintaining that Mid–Continent failed to prove the breach of its deed warranties and therefore, could not bind FMC with the settlement of "unsubstantiated" claims. After Mid–Continent purchased Tract A in 1985, two entities, Schulz and Stover, made claims of acquired easements across the northwest corner of Tract A. Mid–Continent settled with them and granted the easements. A warranty deed contains a covenant against encumbrances that warrants that the estate is "free from encumbrances done or suffered by the grantor or any person under whom he claims." § 442.420(2), RSMo 1986.

Since compromise settlements are favored, we are reluctant to look behind such dispositions of litigated matters. *Title Ins. Co. v. Construction Escrow Service, Inc.,* 675 S.W.2d 881, 888 (Mo.App.1984). When we do review such settlements, we "look only so far as to detect a bona fide dispute of even colorable merit in order to uphold the resolution of differences reached by the parties themselves." *Id.* Once a demand is made to assume the defense of the litigation and that demand is refused, the party requesting such indemnification is free to make a good faith settlement without having to demonstrate liability. *Pilla v. Tom–Boy, Inc.,* 756 S.W.2d 638, 640 (Mo.App.1988).

The record and exhibits support the trial court's ruling that Mid–Continent made a formal demand upon FMC to defend the adverse easement claims. FMC refused the demand and Mid–Continent settled the claims. Where a demand is made upon the indemnor who has actual knowledge of the underlying dispute, a good faith settlement is binding on the indemnor. *Id.* For the settlement to be binding upon FMC, the settlement must be made in good faith and the claim must have some foundation. *Title Ins.,* 675 S.W.2d at 888. The claim must have a "tenable ground" or must be based on a "colorable right" and cannot be "utterly baseless." *Id.* The record reflects adequate evidence that the adverse easement claims were based upon more than mere speculation. The trial court found that such settlements were made in good faith. The evidence was that for over 10 years before 1985, Stover used the northwest corner of Tract A adversely for ingress and egress and parking. Once those conditions were met, FMC was "in no position to insist upon a showing of absolute legal liability." *Pilla,* 756 S.W.2d at 640. As a result, FMC was bound by Mid–Continent's settlement of the adverse easement claims. Point denied.

FMC's final point concerns the $26,000 damage award to Mid–Continent for the decrease in its properties fair market value as a result of the 5,500 square foot ingress and egress easement granted to Schulz and Stover. FMC claims that there is no substantial evidence in the record supporting a $26,000 loss to Mid–Continent resulting from the settlement agreement between Schulz, Stover and Mid–Continent of the prescriptive easements in the northwest corner. Two MAI appraisers testified to the damages resulting from the easement granted to Schulz and Stover. FMCs appraiser, Allan Moore, and Mid–Continents appraiser, John Kirby both testified by way of their depositions and their appraisal reports were admitted into evidence. Mr. Kirby considered not only the actual loss of 5,500 sq. ft. of the total 9,985 sq. ft. due to the settlement, but also the effect of the taking upon the remaining half of the northwest corner. He testified that the remaining half was so narrow that it would no longer support a building with adequate parking. He also testified that the remaining portion would be limited primarily to parking. A partial taking can affect the entire property. *See Union Electric Co. v. Saale,* 377 S.W.2d 427, 429 (Mo. 1964). The court believed Mid–Continent's appraiser and that constituted substantial evidence to support the damage awarded. Point denied.

Next, Mid–Continent argues on its cross-appeal, that the court abused its discretion by failing to award Mid–Continent punitive damages. Punitive damages are never allowable as a matter of right and whether or not the same are awarded lies wholly within the discretion of the trial court. *Koehler v. Warren Skinner, Inc.,* 804 S.W.2d 780, 782 (Mo.App.1990) (*citing Debow v. Higgins,* 425 S.W.2d 135 (Mo.1968)). Therefore, our review is limited to whether the trial court abused its discretion by not allowing punitive damages. *Brown v. Mercantile Bank of Poplar Bluff,* 820 S.W.2d 327, 341 (Mo.App.1991).

The trial court made no finding of outrageous conduct or conscious disregard of others requiring the award of punitive damages. The court's decision is supported by the trial testimony. We find no abuse of the trial courts discretion. Point denied.

The trial court awarded Mid–Continent its attorneys fees for the collateral litigation in which it was involved, however, Mid–Continent now requests attorneys fees

for this litigation. Missouri courts adhere to the "American rule" which provides that litigants bear the expense of their own attorney fees. *County Court of Washington County v. Murphy*, 658 S.W.2d 14, 16 (Mo. banc 1983). Any exceptions fit one of four categories: (1) recovery of fees pursuant to contract, (2) recovery provided by statutes, (3) recovery as an item of damage to a wronged party involved in collateral litigation, and occasionally, (4) reimbursement when ordered by a court of equity to balance benefits. *Brown*, 820 S.W.2d at 340. Mid–Continent argues that an additional award of attorney's fees is required under the fourth exception.

■ Attorneys fees are to be awarded to equitably balance benefits only when very unusual circumstances are shown. *Ohlendorf v. Feinstein*, 697 S.W.2d 553, 558 (Mo. App.1985). Missouri courts have construed unusual circumstances "to mean an unusual type of case or unusually complicated litigation." *Dugger v. Welp*, 646 S.W.2d 907, 909 (Mo.App.1983). In *Ohlendorf*, a breaching partner sued in conversion to get his initial investment returned to him. The court of appeals found that the use of conversion may be out of the ordinary but the nature of the lawsuit, under the circumstance was not. *Ohlendorf*, 697 S.W.2d at 558.

This lawsuit was not an unusual action to determine damages caused by easement problems. The legal actions taken by the parties in the present case are not so different from other actions taken by other parties in similar situations, or by others trying the achieve the same result. The trial court found that the present case was not so unusual or complicated as to qualify for additional attorneys fees. We agree. *Murphy*, 536 S.W.2d at 36. Point denied.

■ In its final point, Mid–Continent contends it is entitled to prejudgment interest on its collateral out-of-pocket damages. The court awarded Mid–Continent its actual damages for all of its out-of-pocket expenditures but sustained FMCs objection to evidence on prejudgment interest and refused to award such interest on these items.

■ In determining the scope and extent of appellate review, we will not consider evidence which the trial court either struck out or rejected. *See Sewell v. Belger Cartage Service*, 720 S.W.2d 363, 369 (Mo.App.1986); *Atcheson v. Braniff International Airways*, 327 S.W.2d 112, 117 (Mo.1959). The transcript contains a little over one page of testimony, which identified an exhibit listing seven items of out-of-pocket expenses. Following the identification of the exhibit, it was offered into evidence and FMC objected. The court sustained the objection and Mid–Continent made no offer-of-proof. This is the extent of the evidence on the subject.

In essence, there is no evidence before this court concerning the items for which Mid–Continent claims prejudgment interest. The burden lies with Mid–Continent to convince this court that the trial court erred by not allowing the evidence. On appeal, Mid–Continent does not argue the basis for the exhibits admissibility, which must be addressed before we can review the validity of the prejudgment interest claims. As a result, whether the evidence was improperly excluded remains unchallenged.

■ Even if we were to consider the validity of these claims, the sketchy record does not allow us sufficient information to make the determination of whether the damages were liquidated. It is the character of the claim and not of the defense that is determinative of the question whether an amount of money sued for is a liquidated sum. *Ehrle v. Bank Bldg. & Equip. Corp. of America*, 530 S.W.2d 482, 497 (Mo.App.1975). The burden of proving the character of the claim is on the movant, Mid–Continent. The burden has not been met.

■ Stephensons cross-appeal raises one last point concerning the sufficiency of the evidence to support the court's damage award of $30,000. Stephenson claims that the evidence supports a higher award because of the reduction in value of Tract B without the conveyance of the two easements.

The only evidence before the court as to the value of the property in question was from Mr. Stephenson and Mr. Brady, the

realtor who sold the property on behalf of FMC. Both testified that the purchase price was $112,500 and that was the reasonable market value of the property with the easements. Mr. Stephenson testified that the reasonable market value without the easements was $30,000, and Mr. Brady testified that the reasonable market value without the easements was $30,000 to $35,000. FMC contends that it presented evidence in the form of a summary of an appraisers testimony. FMC argues on appeal that this exhibit was evidence that the damage sustained to the property was $5,850. Therefore, the award of $30,000 was within the range of the evidence. However, when this document was admitted into evidence, it was admitted solely for the purpose of establishing damages between FMC and Mid–Continent. The courtroom dialogue follows:

[FMC's attorney]: ... you remember yesterday that we stipulated as to appraisers testimony, and I just summarized that and I'd like to have that marked.

Court: That's [FMCs] Exhibit N, which is a summary of the stipulated appraiser's testimony. Any objection to N?

[Mid–Continent's attorney]: No.

[Stephenson's attorney]: Your honor, I assume that *it has nothing to do with Mr. Stephenson's case, it has to do with the case between Mid–Continent and First Missouri.* (emphasis added).

[FMC's attorney]: *That's correct, your honor.* (emphasis added).

[Stephenson's attorney]: Then I have no objection.

Court: First Missouri Corporations N will be admitted.

In fact, after thorough review of the FMCs appraisers deposition, we find that he could not estimate or even comment on the value of the property with or without easements.

■ In a fraudulent misrepresentations case, the appropriate measure of damages is the difference between the actual value of the property at the time of making the contract and the value that it would have possessed if the representation had been true. *DeBow v. Higgins,* 425 S.W.2d 135, 140 (Mo.1968). Again, we must give great deference to the trial court, however, its findings may be set aside if there is no substantial evidence to support it or it is against the weight of evidence. Rule 73.01; *In re Marriage of Lewis,* 808 S.W.2d 919, 922 (Mo.App.1991). In the present case, the proper measure of Stephensons damages would be the value of the property as represented, $112,500, and the actual value at the time of sale, $30,000 to $35,000. The trial court's award of $30,000 is outside the appropriate measure of damages. *See McDaniel v. Grady Bros., Inc.,* 764 S.W.2d 177, 178 (Mo.App.1989). Since the evidence presented a range for the actual value, we remand for further proceedings to determine the damages.

The judgment of the trial court is affirmed except for the ruling awarding $30,000 to Stephenson, which is reversed. The case is remanded for further proceedings consistent with this opinion.

All concur.