_____

No. 95-2877
_____

Anheuser-Busch, Inc.,                    *
                                         *
          Appellee,                      *
                                         *  Appeals from the United States
     v.                                  *  District Court for the
                                         *  Eastern District of Missouri.
John Labatt Limited; Labatt              *
Brewing Company Limited;                 *
Labatt's USA, Inc.; Labatt               *
Importers, Inc.,                         *
                                         *
          Appellants.                    *

_____

No. 95-2879
_____

Anheuser-Busch, Inc.,                    *
                                         *
          Appellant,                     *
                                         *
     v.                                  *
                                         *
John Labatt Limited; Labatt              *
Brewing Company Limited;                 *
Labatt's USA, Inc.; Labatt               *
Importers, Inc.,                         *
                                         *
          Appellees.                     *

_____

          Submitted:  January 10, 1996

              Filed:  July 8, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN, Circuit Judge, and JONES,[*]
     District Judge.
_____

_____

     *The HONORABLE JOHN B. JONES, United States District
Judge for the District of South Dakota, sitting by
designation.

BOWMAN, Circuit Judge.

John Labatt Limited and its associated companies (Labatt) are brewers and distributors of beer, including Labatt Ice Beer, in Canada and the United States. Anheuser-Busch (A-B), headquartered in St. Louis, also brews and distributes beer, including an ice beer of its own. The principal issue in this appeal is whether terms such as "ice beer" and "ice brewed" are trademarks owned by Labatt. A jury decided that the "ice" terms at issue in this case are not trademarks owned by Labatt. We affirm, modifying the judgment entered on the jury's verdict to include the declaratory relief to which A-B is entitled.

I.

The factual summary that follows reflects the record in the light most favorable to the jury's verdict. In 1993, consumers in Canada and the United States had their first opportunity to purchase beers with names such as "Ice Beer" or "Ice Draft." Until 1993 no beer marketed in either Canada or the United States had the term "ice" in its name. In March 1993 Molson, a Canadian brewing company, announced that it would market a new beer in Canada by the name of Molson Canadian Ice. Days later Labatt began marketing a beer in Canada called Labatt Ice. Labatt Ice was initially successful in Canada. Labatt then decided that it wanted to market Labatt Ice in the United States through a United States brewing company, and Labatt contacted A-B to negotiate a licensing agreement for its new product. During the course of the negotiations, Labatt disclosed marketing research on its new product as well as details about its ice brewing process. A-B and Labatt entered into two agreements regarding the confidentiality and future use of the information that Labatt disclosed.

In mid-June 1993, Labatt President Hugo Powell attended a meeting at which A-B's Thomas Sharbaugh explained that A-B was

considering either licensing Labatt's brewing process or developing its own ice-brewing process. On numerous occasions between June and August, A-B officials informed Powell that A-B was attempting to develop its own ice-beer process. A-B proceeded along both paths until late July when it produced a prototype beer from its own brewing process.

On August 4, 1993, A-B informed Labatt that it would market its own ice beer. The final decision was motivated in part by the unavailability of the equipment required to duplicate Labatt's patented brewing process in A-B's breweries. Such equipment may not have been available for six months to a full year. By brewing its own ice beer in a process substantially different from Labatt's brewing process, A-B could market an ice beer within a matter of months. In August 1993, Molson Ice became available in the United States. A-B began selling Ice Draft from Budweiser in the United States in October 1993. Shortly thereafter Labatt started to market Labatt Ice Beer in the United States.

On November 30, 1993, Labatt sent a letter to A-B in which Labatt accused A-B of infringing Labatt trademarks by using terms such as ice, ice brewing, ice brewed, and ice beer. In response to Labatt's letter, A-B filed a complaint in the District Court alleging that Labatt was attempting to trademark the ice terms, which A-B contends are generic. In Count I of its amended complaint, A-B sought a declaratory judgment that Labatt had no protected rights in the ice terms, and that A-B had not "infringed or unfairly competed, by false advertising or otherwise, with respect to any such rights." Amended Complaint at 6. A-B also alleged that Labatt was engaging in a false advertising campaign in violation of the Lanham Act, 15 U.S.C. § 1125(a) (1994) (Count II), and publishing injurious falsehoods in violation of Missouri common law (Count III). A-B sought both injunctive relief and damages.

Labatt answered A-B's amended complaint and filed a counterclaim. Labatt's second amended counterclaim included eight counts: (I) false designation of origin in violation of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1); (II) false advertising in violation of § 43(a)(2) of the Lanham Act, 15 U.S.C. § 1125(a)(2); (III) unfair competition in violation of § 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b), (h), and the Convention for the Protection of Industrial Property, June 2, 1934, art. 10 bis, 53 Stat. 1748, 1780 (Paris Convention); (IV) tortious interference with business expectancy; (V) injurious falsehood; (VI) common-law unfair competition; (VII) dilution of trademarks in violation of Mo. Rev. Stat. § 417.061 (1994); and (VIII) breach of the March 30, 1993 confidentiality agreement between Labatt and A-B. Labatt sought injunctive relief, an accounting of profits, damages, punitive damages, and costs and attorney fees.

After a nineteen-day trial, the jury found that the ice terms are not trademarks (A-B Count I) and that Labatt had not proven any infringement of trademarks (Labatt Count I). The jury also found in favor of A-B on all of the remaining counts in Labatt's counterclaim that the court had submitted to the jury: false advertising (Count II), common-law unfair competition (Count VI), injurious falsehood (Count V), tortious interference (Counts IV), and breach of contract (Count VIII). The jury found in favor of Labatt on A-B's false advertising claim (A-B Count II) but in A-B's favor on its injurious falsehood claim (A-B Count III), awarding compensatory damages in the amount of one dollar and punitive damages in the amount of five million dollars. A flurry of post-trial motions followed the jury's verdicts.

Labatt's motions for a new trial and for judgment as a matter of law were denied by the District Court. Labatt also moved for judgment as a matter of law on Count III of Labatt's counterclaim (unfair competition in violation of the Lanham Act and the Paris Convention) because the District Court had refused to submit Count

III to the jury. The District Court denied the motion. At the same time, the District Court entered judgment in favor of A-B on Labatt's state-law dilution claim (Count VII). On Labatt's motion, the District Court set aside the jury's award of punitive damages. The court held that A-B failed to give adequate notice that it sought punitive damages and failed to allege facts in its amended complaint that would support an award of punitive damages. Thus the result of the nineteen-day battle between these beer-garden goliaths is this: Labatt has no trademarks in the ice terms, and A-B recovered, in addition to its costs, one dollar (with interest accruing at a rate of 7.03% per annum) for Labatt's publication of injurious falsehoods. As noted above, both sides appeal the judgment.

## III.

Labatt has raised a plethora of substantive issues on appeal, seeking either judgment as a matter of law or a new trial. We review the District Court's denial of motions for judgment as a matter of law de novo but its denial of new trial motions only for an abuse of discretion. Butler v. French, 83 F.3d 942, 943, 944 (8th Cir. 1996).

Labatt also has raised one procedural issue, which we will dispose of before considering the substantive issues. Labatt contends that the District Court erred when it refused to grant Labatt's motion to set the order of proof at trial and to realign the parties. Labatt argues that it should have been allowed to present its case first, as the plaintiff, because it carried the burden of proof in the trademark action (A-B Count I) even though A-B initiated this lawsuit as a declaratory judgment action. A district court has wide discretion to set the order of proof at trial. Skogen v. Dow Chemical Co., 375 F.2d 692, 704, 706 (8th Cir. 1967). Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of

proof.  Martin v. Chesebrough-Pond's, Inc., 614 F.2d 498, 501 (5th Cir. 1980) (per curiam).  While Labatt bore the burden of proof on the trademark count in A-B's complaint, A-B bore the burden of proof on the other two counts.  Moreover, A-B was required to prove that Labatt did not have any protected interest in the ice terms, which is the essence of the trademark count, in order to prevail on Counts II and III of its complaint.  In the circumstances of this case, we do not believe that the District Court abused its discretion by denying Labatt's motion to set the order of proof and realign the parties.  Both Labatt and A-B bore the burden of proof on distinct counts of their causes of action.  The District Court understandably chose to allow the actual plaintiff, the party that filed the lawsuit, to proceed first.

A.    Trademark Issues

The principal issue in this appeal is whether terms such as ice beer and ice brewed are trademarks owned by Labatt.  The jury found that the ice terms are not trademarks.  On appeal, Labatt argues that the District Court abused its discretion by (1) admitting irrelevant evidence and (2) improperly instructing the jury on the burden of proof.  Labatt contends that, but for these errors, there is insufficient evidence to support the jury's verdict and thus the District Court should have granted either Labatt's motion for judgment as a matter of law or its motion for a new trial.  While we review de novo a District Court's denial of a motion for judgment as a matter of law, "[a] court should not set aside a jury's verdict lightly."  Nicks v. Missouri, 67 F.3d 699, 704 (8th Cir. 1995).  Our review is limited to assessing whether the evidence, viewed in the light most favorable to the nonmoving party, supports the jury's verdict.  Id.  Because we do not believe that the District Court committed any instructional or evidentiary errors, we hold that Labatt is not entitled to judgment as a matter of law or a new trial on the trademark issue.

1.    Jury Instructions

Turning to Labatt's arguments on the instructional issues, we note that a court of appeals reviews a district court's jury instructions only for abuses of discretion. Hoselton v. Metz Baking Co., 48 F.3d 1056, 1062 (8th Cir. 1995). While "[l]itigants are entitled to have the jury instructed on their claims and theories if the proposed instructions are correct statements of the law, supported by the evidence, and brought to the district court's attention in a timely manner," id. at 1063, the court has wide discretion in formulating the instructions actually given to the jury, Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 977 (8th Cir. 1995). The instructions will be upheld if, taken as a whole, they "fairly and adequately present the issues in the case to the jury." Id.

Labatt first argues that the District Court's instructions "misled" the jury "into believing that even if the ICE MARKS were once trademarks . . . . A-B's infringement was excused if the ICE MARKS ceased functioning as trademarks by" the time of trial. Appellant's Brief at 20. The District Court, however, properly instructed the jury that arbitrary or suggestive marks[1] are "entitled to trademark protection from the date that they are first used in an arbitrary or . . . suggestive way on the product as marketed." Instruction 11. Had the jury believed that the ice terms were trademarks that since had become generic, these

_____

[1]To determine whether a mark is distinctive, courts often classify marks "in categories of generally increasing distinctiveness; . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." Id.; see also First Bank v. First Bank Sys., Inc., No. 95-2238, slip op. at 7 (8th Cir. May 29, 1996); Restatement (Third) of Unfair Competition § 9 (1995).

-7-

instructions and the format of the special verdict form would have allowed the jury to find an infringement by A-B (Verdict Form 1(B)) even though it found that the ice terms were not trademarks at the time of trial (Verdict Form 1(A)). The special verdict form did not require a negative answer on the infringement question if the jury found that the marks were not trademarks at the time of trial. Moreover, the jury rejected Labatt's genericide theory,[2] the basis for its unfair competition claim, thus making it clear that the jury did not believe that the ice terms had been trademarks at any time.

Labatt also proposed to instruct the jury that if Labatt proved that the ice terms were trademarks at one time, the burden of proof then shifted to A-B to prove that the ice terms had since become generic. While the District Court refused to give the instruction proposed by Labatt, the court instructed the jury that "[t]he burden of proving a fact is upon the party whose claim or defense depends upon that fact." Instruction 3. The verdict form clearly states that the issue of whether the marks are generic is "Anheuser-Busch's claim." Verdict Form at 1. We thus conclude that the court did not abuse its discretion when instructing the jury because the instructions, taken as a whole, fairly and adequately presented the issues in the case to the jury.

2. Evidentiary Rulings

Labatt has challenged several evidentiary rulings of the District Court. The admissibility of evidence is an issue that is committed to the sound discretion of the trial court, and "we will not disturb a district court's evidentiary ruling absent a clear and prejudicial abuse of that discretion." Laubach v. Otis

---

[2]Labatt argued that if the ice terms had become generic, it was because of A-B's infringement and mass-marketing campaign to dilute the alleged trademarks.

Elevator Co., 37 F.3d 427, 428-29 (8th Cir. 1994). Having reviewed the relevant portions of the record, we conclude that Labatt's evidentiary arguments are without merit. For example, Labatt argues that the District Court should not have admitted evidence relating to foreign use, trade use, and Labatt's use of the ice terms, or at least the court should have given an instruction limiting the jury's consideration of the evidence. Before trial, however, the District Court ruled the evidence inadmissible unless Labatt claimed that it invented the term ice beer. When Labatt made that claim in its opening statement, all of the hitherto excluded evidence became relevant to rebut that claim. The District Court did not abuse its discretion by admitting the evidence of other uses after Labatt opened the door, and no limiting instruction was warranted.

The District Court instructed the jury in a manner consistent with the law, see Instruction 11, and the jury found that the ice terms were not trademarks. The jury's verdict is supported by the record. In addition to a glaring lack of evidence that would tend to prove that the ice terms were inherently distinctive (i.e., arbitrary, fanciful, or suggestive), there was a great deal of evidence tending to prove that the ice terms were not distinctive in any way. A-B introduced evidence of generic uses of the term "ice beer" that antedate Labatt's uses of the ice terms. None of the consumer survey evidence indicated that the ice terms were functioning as trademarks, and some of it indicated that by October 1994 -- just a year after Labatt introduced Labatt Ice into the United States -- eighty percent of the respondents (eighty-five percent in areas bordering Canada) understood the term ice to be the name of a beer category. Additionally, Labatt's own June 1994 consumer survey "showed that consumers had no clear understanding of ICE BEER's meaning or of its source." Appellant's Brief at 12. In these circumstances, a reasonable jury easily could conclude that the ice terms were not suggestive and never served to identify a particular source or a product in the minds of consumers.

Moreover, a jury could conclude that ice was and always had been the name of a beer category. The ice terms "convey meaning too directly to be suggestive," but, giving Labatt the benefit of every doubt, are arguably "too specific to be generic," Duluth News-Tribune v. Mesabi Publishing Co., No. 95-2912, slip op. at 4-5 (8th Cir. June 3, 1996). See also 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 747 F.2d 81, 87-88 (2d Cir. 1984) (holding that "Cozy Warm ENERGY-SAVERS" is descriptive), cert. denied, 470 U.S. 1052 (1985). Because the District Court did not abuse its discretion when giving the instructions or admitting the evidence that Labatt has challenged, we have no reason to displace the jury's decision that the ice terms were not trademarks and hold that the District Court properly denied Labatt's motions for judgment as a matter or law and a new trial on the trademark issue.

B.    Unfair Competition and Tortious Interference

With respect to Labatt's claim for unfair competition under the Lanham Act and the Paris Convention (Labatt Count III) and its claim for tortious interference with business expectancy (Labatt Count IV), Labatt argues that the District Court should have granted its motions for a new trial or judgment as a matter of law because A-B offered no legitimate business justification for failing to notify Labatt until August 1993 that it would not distribute Labatt Ice in the United States. Labatt characterizes this delay as a "devious manipulation of the licensing negotiations" through which A-B was "stringing Labatt along." Appellant's Brief at 43-44. According to Labatt, A-B's delay satisfies the intentional-interference element of Labatt's tortious interference claim, see Killian Constr. Co. v. Jack D. Ball & Assocs., 865 S.W.2d 889, 891 (Mo. Ct. App. 1993), and the dishonest-business-practice element of its Lanham Act, 15 U.S.C. § 1126, and Paris Convention claims.

The jury rejected Labatt's characterization of the facts. This Court will not second guess the credibility determinations of a jury, <u>Fox v. T-H Continental Ltd. Partnership</u>, 78 F.3d 409, 413 (8th Cir. 1996), and the jury in this case chose to believe the witnesses who testified that A-B considered either licensing Labatt's process or developing its own throughout June and July 1993, that on several occasions A-B informed Labatt's president that A-B was considering developing its own brewing process, and that the final decision was not made until late July when a prototype beer resulted from A-B's development efforts. Based on this testimony, a jury could reasonably conclude that A-B did not intentionally interfere with Labatt's business expectancies and that A-B did not engage in any acts contrary to honest business practices. Thus the District Court properly denied Labatt's motion for judgment as a matter of law and did not abuse its discretion when it refused to grant a new trial on these claims.

C.    Injurious Falsehoods Published By Labatt

Labatt argues that the jury's verdict in favor of A-B on A-B's injurious falsehood claim should be set aside because (1) the jury's verdict is inconsistent with its verdict for Labatt on A-B's false advertising claim; and (2) there is insufficient evidence to support the jury's verdict because there is no evidence that Labatt's advertising misrepresented anything, misled any consumers, or caused A-B any actual pecuniary loss.

A-B has not directly responded to Labatt's argument that the jury verdicts are inconsistent. In the context of its reply-brief argument regarding the jury's award of punitive damages, however, A-B does argue that the verdicts are consistent. Labatt moved to strike these portions of A-B's reply brief because, in Labatt's opinion, they address an issue that A-B should have addressed in its opening brief. Labatt argues that the inconsistent-verdict issue was raised in its opening brief. We ordered the motion to be

taken with the case. Concluding that the portion of the brief in question is a response to Labatt's response to an issue first raised in A-B's opening brief, we deny Labatt's motion.

Pursuant to Eighth Circuit Rule 28A(f), this Court ordered the parties to submit four briefs: (1) the appellant's brief (Labatt's opening brief); (2) the appellee/cross-appellant's brief (filed as one brief) (A-B's opening brief); (3) the appellant's reply brief/cross-appellee's brief (filed as one brief); (4) the cross-appellant's reply brief. In its opening brief, Labatt raised the issue of an inconsistency between the jury's verdicts on A-B's claims of false advertising and injurious falsehood. Labatt claims that any response to its arguments should have been made in A-B's opening brief. The issue is first discussed by A-B in its reply brief. A-B's arguments on this point, however, appear in the context of its argument in support of its appeal of the punitive damages issue, see infra pp. 17-19, an issue that A-B raised in its opening brief. Labatt responded to A-B's argument regarding punitive damages in its reply brief in part by arguing that the verdict underlying the award of punitive damages is "fatally inconsistent." Labatt's Reply Brief at 23. A-B is entitled to reply to this argument in its reply brief because the issue of punitive damages is an issue that was raised in its appeal. We conclude that the portion of A-B's reply brief at issue does not constitute an attempt "to sandbag Labatt," Labatt's Motion to Strike at 2. Out of fairness to Labatt, however, we will not consider A-B's assertion that Labatt waived this issue by failing to raise it before the District Court because Labatt has not had an opportunity to respond to that argument. Labatt, however, was first to raise the issue of inconsistent verdicts, so we do consider A-B's counterarguments on inconsistency.

We recognize that it is our duty to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent. Gallick v. Baltimore & Ohio R.R. Co., 372

-12-

U.S. 108, 119 (1963); First State Bank v. Jubie, No. 95-2112, slip op. at 5 (8th Cir. June 7, 1996). The verdicts in this case are reconcilable. As the unchallenged instructions of the District Court make clear, the two claims have different elements. In these circumstances, the jury could have found that A-B proved all of the elements of the injurious falsehood claim while failing to prove one of the separate elements of the false-advertising claim. For example, the jury might not have found that Labatt's false or misleading "description or representation actually deceived or had a tendency to deceive a substantial portion of the intended audience," Instruction 13 (emphasis added), but still found that "it was reasonably foreseeable that others would rely on the statement," Instruction 14 (emphasis added).

Contrary to Labatt's assertions, there is sufficient evidence to support the jury's verdict on A-B's injurious falsehood claim. Labatt engaged in extensive advertising claiming that "If It's Not Labatt's, It's Not Ice Beer." The jury had sufficient evidence to find that Labatt's slogan was injurious to and understood by the public to be directed at other brewers of ice beer, including A-B. It was not only reasonably foreseeable but Labatt's hope that others would rely on the statement. Finally, based on the evidence the jury was entitled to infer that A-B suffered a loss from Labatt's consistent and continuous publication of this false statement. Thus the District Court properly denied Labatt's motion for judgment as a matter of law and did not abuse its discretion when it refused to grant a new trial on A-B's injurious falsehood claim.

D.    Breach of Contract

Labatt argues that it is entitled to judgment as a matter of law on its breach-of-contract claim because A-B, among other things, used the term "ice beer." In relevant part, the confidentiality agreement between the parties provided as follows:

-13-

Anheuser-Busch confirms that the marketing information and marketing proposals described in the attached papers were communicated by Labatt to Bob Gunther and Bill Campbell in confidence, and are not to be used by them or by Anheuser-Busch for any purpose other than the intended purpose. Anheuser-Busch's duty of confidence shall not apply to any information:

(a) disclosed in a patent, copyright registration, or in the public domain through no fault of Anheuser-Busch;

(b) obtained by Anheuser-Busch from a third party lawfully in possession of it and under no secrecy obligation to it; or

(c) in Anheuser-Busch's knowledge or possession prior to March 24, 1993 and not acquired by Anheuser-Busch, either directly or indirectly, from Labatt.

March 30, 1993 Letter Agreement at 1-2. Labatt reads this agreement to create two duties, a non-use duty and confidentiality duty. According to Labatt, the exceptions apply only to the duty of confidentiality. Anheuser-Busch reads the agreement as imposing one duty of confidentiality, part of which is its agreement not to use the confidential information. Thus Anheuser-Busch believes that the exceptions apply to both its agreement to keep the information confidential and its agreement not to use the confidential information.

The District Court submitted the issue to the jury with proper and unchallenged instructions, and the jury found for A-B. Labatt claims that the issue should have been resolved by the District Court in its favor as a matter of law. We disagree. The District Court concluded in the first instance that the agreement was ambiguous as a matter of law, and we agree. Once the court decides that a contract is ambiguous, "resolution of the ambiguity is a question of fact to be determined by the jury." John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO, 913 F.2d 544, 551 (8th Cir. 1990), cert. denied, 500 U.S. 905

(1991).   The District Court did not err when it submitted the interpretation of the confidentiality agreement to the jury.

E.    Other Issues

Labatt has also appealed from the jury's adverse verdict on its common-law unfair competition claim (Labatt Count VI).    As Labatt recognizes, the unfair-competition theory required it to prove that one of the ice terms was a trademark.  Appellant's Brief at 39 (citing Cornucopia, Inc. v. Wagman, 710 S.W.2d 882, 888 (Mo. Ct. App. 1986)).  Having already concluded that Labatt failed to prove that any of the ice terms were trademarks, it necessarily follows that the jury correctly rejected Labatt's common-law unfair competition claim.

Similarly, Labatt's false advertising (Labatt Count II) and state-law dilution of trademark (Labatt Count VII) claims are dependent on a finding that the ice terms were or are Labatt trademarks.  With respect to Count II, Labatt claims that "[b]y falsely telling consumers that A-B had an 'ice beer' and 'ice brewed' its beer, A-B both diverted sales to itself and diluted the ICE MARKS."  Appellant's Brief at 42.  With respect to Count VII, Labatt recognizes that an element of the dilution claim is proof that the ice terms are or were trademarks.  Appellant's Brief at 45.  Having held that Labatt failed to prove its alleged common-law trademark rights in the ice terms, we also conclude that Labatt's false advertising and dilution claims must fail.[3]

_____

[3]From what we can gather, Labatt's claim that A-B published injurious falsehoods about Labatt is also dependent on a finding that the ice terms were Labatt trademarks.  Section XV of Labatt's brief argues only that Labatt proved the elements of an injurious falsehood claim "as demonstrated above."  Appellant's Brief at 47. The three sections "above" relate to trademark-dependent claims.

In sum, we conclude that the District Court properly denied Labatt's motion for judgment as a matter of law on the various claims that the jury decided in A-B's favor. The court's refusal to grant Labatt's motion for a new trial does not constitute an abuse of discretion.

## IV.

Anheuser-Busch also has appealed from the judgment of the District Court. A-B contends that the District Court abused its discretion when it denied A-B's motion to amend the judgment to include declaratory and injunctive relief and when it set aside the jury's punitive damages award. We address each of these issues in turn.

A.    Declaratory and Injunctive Relief

In its Amended Complaint, A-B sought a declaration that Labatt does not have "any protectable state, federal, international convention or treaty rights in 'ice,' 'ice beer,' 'ice brewing' or similar terms, and that Anheuser-Busch has not infringed or unfairly competed, by false advertising or otherwise, with respect to any such rights." Amended Complaint at 8.    A-B also sought broad injunctions that would have prohibited Labatt from asserting any rights in the ice terms and falsely describing, representing, advertising, or promoting both Labatt's and A-B's "products and processes." Id. at 8-9.    After the District Court entered its judgment, A-B twice moved to amend the judgment to include declaratory and injunctive relief.    The District Court twice denied A-B's motion without any explanation.    We review a District Court's decision on a motion to alter or amend the judgment under the deferential abuse-of-discretion standard. United Food & Commercial Workers Int'l Union, Local 751 v. Brown Group, Inc., 50 F.3d 1426, 1432 (8th Cir. 1995), rev'd on other grounds, 116 S. Ct. 1529 (1996).    "[T]raditional equitable principles requiring the

balancing of public and private interests control the grant of declaratory or injunctive relief in the federal courts." Webster v. Doe, 486 U.S. 592, 604-05 (1988).

A-B argues that it is entitled to declaratory and injunctive relief based on the jury's verdicts in its favor. With respect to declaratory relief, Labatt argues that the jury's verdict does not cover the scope of the requested declaration. We disagree. Labatt lost on every count, save A-B's false advertising claim, and we have affirmed that result. Labatt therefore failed to prove that it has any protected rights in the ice terms and failed to prove that A-B infringed any rights, unfairly competed, or falsely advertised. No equities weigh against issuing the declaration, and therefore the District Court abused its discretion by denying A-B's motion to amend the judgment to include such a declaration.

Injunctive relief, however, is a different matter. While A-B was successful on its injurious falsehood claim, the jury awarded only one dollar in compensatory damages and Labatt prevailed on A-B's false advertising claim. Moreover, evidence in the record tends to show that A-B's ice beer products have done very well in the market, which might lead one to conclude that Labatt's injurious falsehoods have not caused significant injury to A-B. As A-B recognizes, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Appellee's Brief at 33 (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)). In these circumstances, a district court might reasonably conclude that the equities are fairly balanced and refuse to issue an injunction against Labatt.

B.    Punitive Damages

Finding that Labatt had published injurious falsehoods, the jury awarded one dollar in compensatory damages and five million dollars in punitive damages to A-B. The District Court, however,

granted Labatt's motion to set aside the jury's award of punitive damages for lack of notice.  A-B appeals the District Court's decision.  State law governs the reduction or elimination of the award of punitive damages in this case because the claim for damages resulting from Labatt's publication of injurious falsehoods is based on state law.  See Maristuen v. National States Ins. Co., 57 F.3d 673, 679 (8th Cir. 1995).  Under Missouri law, punitive damages are awarded in the discretion of the trial court.  Stephenson v. First Missouri Corp., 861 S.W.2d 651, 657 (Mo. Ct. App. 1993); Propst v. Brown, 854 S.W.2d 844, 845-56 (Mo. Ct. App. 1993).  We therefore review the District Court's decision to set aside the jury's award of punitive damages for an abuse of discretion.  A district court abuses its discretion when it bases a decision on an erroneous interpretation of the law or a finding of fact that is clearly erroneous.  First Bank v. First Bank Sys., Inc., No. 95-2238, slip op. at 5-6 (8th Cir. May 29, 1996).

Having reviewed the record, we conclude that the District Court's finding that A-B failed to give adequate notice of its claims for punitive damages for Labatt's publication of injurious falsehoods is not clearly erroneous.  A-B never mentioned punitive damages in its pleadings or in its answers to Labatt's interrogatories.  A-B first mentioned punitive damages one week before trial when it submitted supplemental jury instructions.  Federal Rule of Civil Procedure 15(b), relied upon by A-B, is not applicable in these circumstances.  The rule provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Fed. R. Civ. P. 15(b).  In this case, the issue of punitive damages was tried to the jury despite the express resistance of Labatt.  The District Court stated that Labatt filed written objections and preserved its objections orally on February 8, 1996, before the instructions and verdict form were given to the jury.  We agree with the District Court that Labatt did not waive its objection to the submission of

the issue of punitive damages.  Thus the District Court did not abuse its discretion when it set aside the punitive damages award for lack of notice.

V.

For the reasons stated, the judgment of the District Court is affirmed except insofar as that judgment fails to provide for the declaratory relief to which Anheuser-Busch is entitled.  We therefore remand the case so that the judgment can be amended to include an appropriate declaration.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.