**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1240

_____

Kris P. Anderson; Omaha Cold      *
Storage Terminals, Inc.,      *
     *
         Plaintiffs - Appellants,    *
     *   Appeal from the United States
     v.                *   District Court for the District
     *   of Nebraska.
Nissan Motor Co., Ltd.,      *
     *
         Defendant - Appellee.    *

_____

Submitted:   October 21, 1997
Filed:    March 18, 1998

_____

Before McMILLIAN, FLOYD R. GIBSON, and LAY, Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

Appellant Kris P. Anderson filed this products liability action on December 30, 1992, in the District Court for Douglas County Nebraska. His employer, Omaha Cold Storage Terminals, Inc. ("Omaha Cold Storage") was joined as a party-plaintiff for workers' compensations subrogation purposes. See Neb. Rev. Stat. § 48-118 (1993). Anderson suffered injuries during employment while operating a forklift manufactured by Nissan Motor Co., Ltd. ("Nissan"). Anderson claimed Nissan was liable for his injuries based on negligence and strict liability. Nissan removed the case to federal court based on diversity jurisdiction. Anderson raised four theories of negligence. The

district court granted Nissan's motion to dismiss Anderson's claims of a post-sale duty to retrofit the forklift with operator restraints and a post-sale duty to warn of the dangers associated with the failure to use an operator restraint system. Anderson proceeded to trial with his two other negligence claims -- duty to warn and duty to equip the forklift with an operator restraint at the time of manufacture and sale of the forklift -- as well as his claim of strict liability. The jury returned a verdict in favor of Nissan. On appeal, Anderson argues that the district court erred in dismissing his claims of post-sale duty to warn and duty to retrofit. He also asserts that the district court made several evidentiary errors. Because we conclude that the district court[1] did not commit reversible error, we affirm.

## I.    BACKGROUND

In 1982, Nissan manufactured the F02 forklift. Omaha Cold Storage purchased an F02 forklift from Ron's Forklift in August of 1983. On October 11, 1990, Anderson operated the forklift while working at Omaha Cold Storage. As he made a right hand turn, the forklift began to tip over. Anderson unsuccessfully attempted to scramble from beneath the falling forklift. Unfortunately, he was not able to escape harm's way and was crushed by the forklift's overhead guard structure. Anderson sustained serious injuries as a result of the accident.

Because forklifts are commonly used in warehouse environments, where falling objects are often a threat to those on the ground floor, forklifts are often equipped with overhead guard structures to protect forklift operators from being hit by falling objects. In 1982 and 1983, however, forklifts were not commonly fitted with operator restraint systems to prevent operators from falling out of forklifts during tip overs. The lack of a restraint system increased the likelihood that an operator could be crushed by the

---

[1]The HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska.

overhead guard structure in the event of a tip over. However, when Nissan manufactured the forklift in 1982 and Ron's Forklift sold it to Omaha Cold Storage in August of 1983, the predominant theory in the forklift industry was that the inclusion of operator restraints may have increased the likelihood of injury because of the "head-slap" effect. The theory was that, because of a forklift's narrow construction, when it tipped over, the force of the fall would quickly slam the operator toward the ground. Because the operator would be restrained at the waist, the operator's head would slam toward the ground, and without a simultaneous release of the operator's body, the head would slap the ground, causing potentially life-threatening injuries.

Anderson sued Nissan claiming negligence and strict liability. The jury returned a verdict in favor of Nissan. Anderson appeals, and we affirm.

## II. DISCUSSION

Anderson's first argument on appeal is that the district court erred when it granted Nissan's motion to dismiss his claims of post-sale duty to warn and duty to retrofit. We review de novo a district court's grant of a motion to dismiss for failure to state a claim. See Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998). A district court should not dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief. See id. We also review the district court's interpretation of Nebraska law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231 (1991); First Commercial Trust Co., N.A. v. Colt's Mfg. Co., Inc., 77 F.3d 1081, 1083 (8th Cir. 1996). "In determining the law of the State of Nebraska, we are bound by the decisions of the Nebraska Supreme Court." Farr v. Farm Bureau Ins. Co. of Nebraska, 61 F.3d 677, 679 (8th Cir. 1995). If the Nebraska Supreme Court has not addressed the issue before us, we must determine what the court would probably hold were it to decide the issue. See id. "In making this

determination, we may consider relevant state precedent, analogous decisions, considered dicta, scholarly works and any other reliable data." Id.

The Nebraska Supreme Court has not specifically addressed the issue of whether it would recognize either a post-sale duty to warn or a duty to retrofit. The district court determined that, when called upon to decide the issue, the Nebraska Supreme Court would not be likely to recognize either cause of action. After a de novo review, we agree with the district court's determination that Nebraska would not impose either a post-sale duty to warn or a duty to retrofit; therefore, we affirm the district court's dismissal of these claims pursuant to Rule 12(b)(6).

While the Nebraska Supreme Court has not ruled directly on either of these issues, general Nebraska products liability law leads us to conclude that the court would not impose either of the post-sale duties on product manufacturers.[2] The primary case which influences this conclusion is Rahmig v. Mosley Mach. Co., 412 N.W.2d 56 (Neb. 1987).

One of the primary issues decided by the Rahmig court was whether a products liability plaintiff must "prove feasibility or a practicable alternative but safer product in a negligent design case." Id. at 82. The court overruled a prior Nebraska Supreme Court case which held that a products liability plaintiff was required to prove the feasibility of an alternative safer design. See Nerud v. Haybuster Mfg., Inc., 340 N.W.2d 369, 374-75 (Neb. 1983). The Rahmig court reasoned that requiring such proof would contradict Neb. Evid. R. 407, which generally prohibits evidence of remedial measures taken subsequent to the event or accident at issue in the case. See Rahmig, 412 N.W.2d at 82. The court stated that "[r]equiring a plaintiff to prove

---

[2]This case presents only the issue of a manufacturer's post-sale duties. This decision should not be interpreted to address the post-sale duties of any other potentially liable parties in the chain of distribution.

-4-

feasibility or a practicable alternative but safer product in a negligent design case unnecessarily invites perilous and unfairly prejudicial evidence of postaccident matters excludable under Neb. Evid. R. 407." Id. The court also stated, though admittedly in dicta, that "[i]n a products liability action, the plaintiff has the burden to prove that the alleged defect existed when the product left the manufacturer." Id. at 69 (emphasis added).

The Nebraska Supreme Court's statements in Rahmiq lead us to conclude that Nebraska favors limiting the state's products liability law to actions or omissions which occur at the time of manufacture or sale. Based on this conclusion, we hold that the district court correctly dismissed Anderson's claims for post-sale duty to warn and duty to retrofit pursuant to Rule 12(b)(6).

Anderson also challenges two of the district court's evidentiary rulings. "The admissibility of evidence is an issue that is committed to the sound discretion of the trial court, and we will not disturb a district court's evidentiary ruling absent a clear and prejudicial abuse of that discretion." Anheuser-Busch, Inc. v. John Labatt Ltd., 89 F.3d 1339, 1345 (8th Cir. 1996) (quotation and citation omitted), cert. denied, 117 S. Ct. 944 (1997).

Anderson's first evidentiary challenge is that the district court abused its discretion in refusing to allow him to introduce post-sale evidence of the feasibility of alternative forklift designs. He claims that the feasibility of safer designs was placed in issue by Nissan and he therefore should have been able to introduce such evidence. The district court determined that post-sale evidence was not relevant because the post-sale causes of action had been eliminated from the case. In addition, the court determined that the prejudicial effect of the evidence and its tendency to confuse the jury required its exclusion. We hold that the district court did not abuse its discretion in making this ruling. First of all, Nissan did not question the feasibility of the alternative design -- it merely questioned the safety of including operator restraints

based on studies of the head-slap theory.  In fact, Anderson's attorney specifically asked one of Nissan's experts whether it was feasible to include operator restraints on forklifts in 1982.  Nissan's expert responded:  "Without any other concern, just screwing a seat belt on in 1982 could have been done."  Trial Tr. at 717.  Therefore, it would seem that the defense did not contest feasibility, but, in fact, conceded it. We conclude that the district court did not abuse its discretion in excluding the post-sale evidence.

Anderson also challenges the district court's decision to limit his cross examination of one of Nissan's experts.  The expert testified regarding another forklift manufacturer's seat design which came onto the market within months after the sale of the Nissan forklift to Omaha Cold Storage.  Anderson's attorney asked whether "with just a little bit of retrofitting the [other manufacturer's] seat would work for [Nissan]?" Trial Tr. at 736 (emphasis added).  The district court stated that, based on its prior decision to dismiss Anderson's duty to retrofit claim, the question was inappropriate.  We cannot conclude that the district court abused its discretion in making this ruling.

**III.  CONCLUSION**

Based on the reasons set forth in this opinion, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-