Judy K. **DISHMAN**, Plaintiff,

v.

**AMERICAN GENERAL ASSURANCE COMPANY, f/k/a U.S. Life Credit Life Insurance Company, Defendant.**

**No. C 01–3002–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

April 3, 2002.

Joel J. Yunek, Laird, Heiny, McManigal, Winga, Duffy & Sambaugh, P.L.C., Mason City, IA, for Plaintiff.

Michael W. Thrall, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO RECONSIDER AND MOTION TO SET THE ORDER OF PROOF FOR TRIAL**

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *BACKGROUND* ..................................................1121

II. *LEGAL ANALYSIS* ............................................1122
    A. *AGAC's Motion To Reconsider* ........................1122
        1. *Authority to reconsider the summary judgment ruling* ..............1122
        2. *The effect of the Rubes decision* ...................................1123
    B. *Other Trial–Related Matters* ...........................1127
        1. *AGAC's motion to set the order of proof for trial* ....................1127
        2. *Location of trial* ...........................................1128

III. *CONCLUSION* ..............................................1128

This matter comes before the court pursuant to the April 1, 2002, motion of defendant American General Assurance Company (AGAC) to reconsider portions of the court's February 19, 2002, ruling on cross-motions for partial summary judgment, *see Dishman v. American Gen. Assur. Co.,* 187 F.Supp.2d 1073 (N.D.Iowa 2002), in light of a subsequent decision of the Iowa Supreme Court in *Rubes v. Mega Life & Health Ins. Co., Inc.,* No. 135/01–0433, 642 N.W.2d 263 (2002), *petition for reh'g pending.* This matter also comes before the court pursuant to AGAC's March 27, 2002,

motion to set the order of proof for trial. Plaintiff Dishman has not yet responded to either motion. Although the court is ordinarily receptive to motions to reconsider, and ordinarily tries to provide the parties with all reasonable opportunities to present arguments upon all motions, trial in this matter is set to begin on April 15, 2002. Therefore, in order to facilitate the parties' preparations for trial and to avoid any delay of the trial, the court will address both of AGAC's motions without waiting for plaintiff Dishman's responses or hearing further arguments.

## I. BACKGROUND

In this action, plaintiff Judy K. Dishman originally asserted claims of breach of contract, breach of reasonable expectations, and first-party bad faith arising from AGAC's failure to pay claims on two of three credit life insurance polices following the death of her husband, Randall Dishman. AGAC's primary defense to each of these claims was that Mr. Dishman misrepresented that he was in "good health" on the credit life insurance applications, where he was suffering from the serious effects of post-polio syndrome, including frequent bouts of what had been diagnosed as "congestive heart failure." In its February 19, 2002, ruling, the court granted AGAC's motion for summary judgment on Mrs. Dishman's "reasonable expectations" and "first-party bad faith" claims, which neither party has moved to reconsider. Rather, AGAC has moved to reconsider the court's disposition of the parties' cross-motions regarding Mrs. Dishman's breach-of-contract claim. `

██ As to that claim, in its February 19, 2002, ruling, the court concluded that the parties nowhere disputed the elements of Mrs. Dishman's breach-of-contract claim; rather, what was truly at issue was AGAC's affirmative defense of fraudulent misrepresentation. Prior to oral argu-

ments on the parties' cross-motions for summary judgment, the court notified the parties that it was the court's belief that the elements of AGAC's affirmative defense of fraudulent misrepresentation to Mrs. Dishman's breach-of-contract claim were set out in *Higgins v. Blue Cross of Western Iowa and South Dakota*, 319 N.W.2d 232 (Iowa 1982). That is, such a defense is established if the insurer proves the following by clear, convincing, and satisfactory evidence: (1) the applicant made a false representation or non-disclosure in connection with his application for insurance; (2) the representation or non-disclosure was material to the transaction, that is, the representation or non-disclosure materially affected the risk assumed by the insurer; (3) the applicant made the representation with actual knowledge of its falsity or reckless disregard of whether it was true or false or the applicant knowingly withheld material information; (4) the applicant intended to deceive the insurer; (5) the insurer relied on the applicant's representation or non-disclosure in issuing the insurance contract; and (6) the insurer would not have issued the insurance contract if it had known the true facts. *Higgins*, 319 N.W.2d at 236–37 (finding that the trial court's instructions were in error, because they failed to include non-disclosure, and instead were stated only in terms of affirmative falsehood). At the oral arguments on the cross-motions for summary judgment, the parties concurred in this statement of the elements of AGAC's affirmative defense to Mrs. Dishman's breach-of-contract claim.

In its analysis of the parties' cross-motions for summary judgment on this defense, the court concluded, first, that Mr. Dishman's statement that he was in "good health" at the time of the applications was false as a matter of law, where he was suffering from serious effects of post-polio syndrome at the time he made the applica-

tions, and thus was suffering from what must be called a "disease" that was quite plainly " 'a vice in the constitution or [ailment] so serious as to have some bearing on the general health and continuance of health.' " *Dishman,* 187 F.Supp.2d at 1088 (quoting *Service Life Insurance Company of Omaha, Nebraska v. McCullough,* 234 Iowa 817, 13 N.W.2d 440, 447 (1944)). However, the court concluded that, "[a]lthough perhaps tenuously and just barely," Mrs. Dishman had generated genuine issues of material fact on the elements of "knowledge of falsity" and "intent to deceive" with regard to the "good health" representations. These genuine issues of material fact were generated by evidence that Mr. Dishman could "subjectively," or even "reasonably," have believed that he was in "good health," because he had controlled his post-polio syndrome and resulting chronic conditions for many years, was able to maintain full-time employment, and made no effort to hide the fact that he had had polio and continued to suffer some consequences from the disease. *Id.* at 1089. In so concluding, the court noted the fact that "intent" is the quintessential jury question, and that AGAC's affirmative defense was subject to the heightened burden of proof by clear, convincing, and satisfactory evidence. *Id.* Moreover, the court declined to hold that the "materiality," "reliance," and "would not have issued" elements had been established as a matter of law, notwithstanding record evidence supporting AGAC's contentions, because some of that evidence was equivocal, and because the court had *sua sponte* raised issues concerning these elements of the defense, which meant that Mrs. Dishman may not have had a full and fair opportunity to marshal evidence regarding these elements prior to oral arguments. *Id.* at 1090. Thus, the court stated that it "will consider these elements still at issue at trial." *Id.*

## II. LEGAL ANALYSIS

### A. AGAC's Motion To Reconsider

AGAC has moved the court to reconsider its conclusions regarding AGAC's affirmative defense and instead grant summary judgment in AGAC's favor on Mrs. Dishman's breach-of-contract claim, because AGAC contends that the Iowa Supreme Court's subsequent decision in *Rubes v. Mega Life & Health Ins. Co., Inc.,* No. 135/01–0433, 642 N.W.2d 263 (Iowa Feb. 27, 2002), makes clear that the elements of the misrepresentation defense that the court found were genuinely at issue here, "knowledge of falsity" and "intent to deceive," are not, as a matter of law, elements of AGAC's affirmative defense at all. AGAC argues that, "[w]hile not expressly overruling *Higgins,* the Iowa Supreme Court [in *Rubes* ] squarely addressed the elements a defendant must prove when it relies on the doctrine of equitable rescission to avoid a contact," and held that neither proof of intent to deceive nor scienter is required. AGAC's Brief In Support Of Motion To Reconsider at 1–2. Rather, AGAC argues, the intent that must be established is simply an intent to induce the other to act, an element that is not subject to any genuine issue of material fact here, where the "good health" representation was made for no other reason than to induce AGAC to issue the credit life insurance policies.

### 1. Authority to reconsider the summary judgment ruling

As this court recently explained in *EEOC v. American Home Products Corp.,* 165 F.Supp.2d 886 (N.D.Iowa 2001), although the Federal Rules of Civil Procedure do not seem to provide any basis for a motion to reconsider this court's *grant* of partial summary judgment, that means that this court actually has more, rather than less, discretion to alter or amend such

an interlocutory order than is provided by either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See American Home Prods. Corp.*, 165 F.Supp.2d at 892. This court has also held that courts retain the power to reconsider and revise an order *denying* summary judgment, which is also interlocutory in nature, up until the time a final judgment is entered. *See Longstreth v. Copple*, 189 F.R.D. 401, 403 (N.D.Iowa 1999). The court, therefore, has the authority to reconsider, alter, or amend the challenged portions of its February 19, 2002, ruling, should it decide it is appropriate or necessary to do so.

### 2. The effect of the Rubes decision

■ Turning to the effect of the *Rubes* decision upon this court's conclusions in the portions of the February 19, 2002, ruling considering AGAC's affirmative defense of misrepresentation, the court agrees with AGAC that *Rubes* held, in part, as follows:

> When a party relies on the doctrine of equitable rescission to avoid a contract, five elements must be proven: "(1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance." *Hyler [v. Garner]*, 548 N.W.2d [864,] 872 [ (Iowa 1996) ]; *accord Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F.Supp. 1179, 1193 (N.D.Iowa 1995).

*Rubes*, 642 N.W.2d at 269.[1] However, the court disagrees with AGAC's contention that the *Rubes* decision requires reconsideration, alteration, or amendment of this court's February 19, 2002, ruling. Rather, the court finds that *Rubes* is simply not controlling here, because it does not state the elements of AGAC's *affirmative defense*.

First, the *decision* in *Rubes* says nothing whatever about consideration of an "affirmative defense" of misrepresentation to an action at law for breach of contract. The only mention of any "defense" is in the synopsis on the first page of the slip opinion, which states, "Insurance company contests declaratory judgment for insured, urging affirmative defense of equitable rescission. **REVERSED AND REMANDED.**" *See Rubes*, 642 N.W.2d at 263 (emphasis in the original). This characterization of the case, however, is at odds with Judge Neuman's decision, which makes clear that what was before the court was a declaratory judgment action, *sounding in equity, see id.*, 642 N.W.2d at 265 involving the insured's declaratory judgment action concerning his coverage under the policy and the insurer's *counterclaim* for equitable rescission of the insurance contract based on misrepresentation of prior medical treatments. *Id.*, 642 N.W.2d at 269.[2] More specifically, in *Rubes*, the insurer notified the insured that the company would decline coverage for the insured's liver

---

1.  Pagination of the slip opinion in *Rubes* necessarily varies, depending upon the format in which it is printed from the Iowa Supreme Court's website. Throughout this decision, the court will rely upon the Microsoft Word version of the slip opinion opened and printed from the website, rather than a "downloaded" version or a printout of the "full text" version displayed on the website.

2.  This reading of the issues in *Rubes* is confirmed by this court's review of the parties' briefs on appeal in that case. The briefs of both parties in *Rubes* demonstrate that what was at issue was whether or not the insurer was required to prove the "scienter elements" of "knowledge of falsity" and "intent to deceive," or was instead only required to prove "intent to induce the [insurer] to act," to sustain the insurer's *counterclaim* for equitable rescission in an action in equity. The elements of an *affirmative defense* of misrepresentation to a breach-of-contract claim in an action at law simply were not at issue on appeal in *Rubes*.

transplant, because the insured had not revealed the full extent of his medical history. However, before taking action to rescind the policy, the insurer gave the insured fifteen days to furnish additional information concerning his previous illness and medical treatment, during which time, the insured instituted the declaratory judgment action concerning his coverage under the policy. ·The insured then counterclaimed for equitable rescission of the insurance contract. *See id.*, 642 N.W.2d at 268–69. Thus, while *Rubes* involved an ongoing dispute between the parties, in the context of a declaratory judgment action, and thus sounded in equity, the present action involves AGAC's refusal to pay on the credit life insurance policies, Mrs. Dishman's action for breach of contract, and AGAC's assertion of misrepresentation only as a defense to Mrs. Dishman's breach-of-contract claim.

Moreover, in *Rubes*, the Iowa Supreme Court relied on this court's decision in *Utica Mutual Insurance Company v. Stockdale Agency*, 892 F.Supp. 1179 (N.D.Iowa 1995), as "clarif[ying] the historical distinction drawn between the proof required to sustain an equitable action to rescind a contract and the proof required to recover at law based on fraudulent representation." *Rubes*,, 642 N.W.2d at 269 (citing *Utica Mut. Ins. Co.*, 892 F.Supp. at 1195).

> An action to rescind a contract is regarded as less severe, and hence less demanding in its proof requirements, than an action at law for damages based

on fraud. *Hyler*, 548 N.W.2d at 871. In an equitable rescission action, it is not the knowledge of falsity that is at issue, but "whether misrepresentations induced the complaining party to contract." *Utica*, 892 F.Supp. at 1195. As this court stated in *Hyler*, injecting an "intent to deceive" element in a rescission case would reintroduce the concept of scienter, "making the elimination of this requirement in equity cases illusory." *Hyler*, 548 N.W.2d at 872.

*Rubes*, 642 N.W.2d at 269.

In *Utica Mutual Insurance Company*, this court had pointed out that "[c]areful examination of Iowa cases demonstrates that fraudulent misrepresentation in the inducement to contract gives rise to at least three distinct actions, two of which are 'at law' and one of which is 'in equity.'" *Utica Mut. Ins. Co.*, 892 F.Supp. at 1190. This court explained, "First, and by far the most common action based on fraudulent misrepresentation is a *cause of action* 'at law' for money damages caused to the plaintiff by the fraudulent inducement to contract." *Id.* (emphasis in the original) (citing cases). "Second, fraudulent misrepresentation in the inducement to contract may be raised as a *defense* to a breach of contract claim." *Id.* at 1191 (emphasis in the original) (citing *Higgins*, 319 N.W.2d at 236). "Third, fraudulent misrepresentation may be pleaded as *grounds for rescission* of a contract in an action in equity." *Id.* (emphasis in the original) (citing cases).[3] The cause of action at issue in both *Utica Mutual Insurance* and *Rubes*, however, was a claim for equitable rescission of a contract based on fraudulent misrepresentation. *See Utica*

---

3. In a footnote in *Utica Mutual Insurance Company*, this court noted that "[a] fourth action founded on fraudulent misrepresentation is assertion of equitable estoppel barring relief to a party who seeks to recover on breach of contract," which was "analogous to, but not the same as, the use of fraudulent misrepresentation as a defense in a breach of contract action at law." *Id.* at 1192 n. 7

(citing *Hawkeye Land Co. v. Iowa Power & Light*, 497 N.W.2d 480, 486 (Iowa Ct.App. 1993)). The court also identified a case involving "rescission" as an "equitable defense to a contract action," relying on a misrepresentation prior to the alleged breach as establishing that there was no contract to breach. *See id.* (citing *Clayburg v. Whitt*, 171 N.W.2d 623, 626 (Iowa 1969)).

*Mut. Ins. Co.*, 892 F.Supp. at 1198; *Rubes*, 642 N.W.2d at 268–69 ("MEGA counterclaimed for rescission of the insurance contract.") & 8 (defining MEGA's claim as a claim for "equitable rescission"). Consequently, it is not surprising that, in *Rubes*, the Iowa Supreme Court held that the insurer was only required to prove the five elements of equitable rescission based on misrepresentation identified above, *see Rubes*, 642 N.W.2d at 269 (citing *Hyler*, 548 N.W.2d at 872, and *Utica Mut. Ins. Co.*, 892 F.Supp. at 1193), rather than the six elements of the *affirmative defense* identified in *Higgins*, 319 N.W.2d at 236–37. Nor is it surprising that the Iowa Supreme Court did not comment on *Higgins*, or "expressly overrule it," because *Higgins* involved an affirmative defense in an action at law, not the sort of affirmative claim for equitable rescission based on misrepresentation in an action sounding in equity that was before the court in *Rubes*.[4]

AGAC now argues that *Higgins* does not constitute a categorical statement of the elements of an affirmative defense of misrepresentation in an action at law for breach of contract, because in *Higgins*, the court was only presented with the limited question of whether the trial court had erred in stating the elements of the defense in terms of affirmative misrepresentations rather than encompassing nondisclosures as well. That may be a fair reading of the question presented by the parties in *Higgins*. *See Higgins*, 319 N.W.2d at 237 ("Defendants objected to [the trial court's] instruction [on the elements of the defendant's affirmative defense of misrepresentation] on the ground

that it failed to inform the jury that omission of a material fact can be equivalent to an affirmative misrepresentation."). However, in *Higgins*, the Iowa Supreme Court plainly equated the elements of the *affirmative defense* of misrepresentation to a breach-of-contract claim with the elements of a claim *at law* for damages based on fraudulent misrepresentations in the inducement to contract. Specifically, in *Higgins*, the court found that "[t]he ... jury is told [in the challenged instruction] what it *must* find in order for defendants to prevail on their affirmative defense. Because that statement contains no reference to nondisclosure, a jury could erroneously conclude that the law requires proof of an affirmative falsehood." *Id.* In so holding, the court relied on two cases entertaining *claims* of fraud in the inducement to contract, not *affirmative defenses* of fraud in the inducement to breach-of-contract claims. *See id.* (citing *Lockard v. Carson*, 287 N.W.2d 871, 876–77 (Iowa 1980), and *Loghry v. Capel*, 257 Iowa 285, 288–92, 132 N.W.2d 417, 419–21 (1965)). Also, because the court in *Higgins* ordered a new trial on the basis of the erroneous instructions on the defense of misrepresentation, it addressed other issues "likely to recur on remand." *Id.* Under the circumstances, it seems unlikely that, in *Higgins*, the Iowa Supreme Court would have ignored the legal error of a misstatement of the elements of the affirmative defense.

This court also concludes that there are sound reasons for requiring a party asserting an affirmative defense of misrepresen-

---

4. Had the court in *Rubes* been entertaining or attempting to clarify the elements of the affirmative defense of misrepresentation in an action at law for breach of contract, it seems likely that the Iowa Supreme Court would have addressed the *Higgins* decision directly, rather than overruling *Higgins sub silentio*, as AGAC contends. This is so, because the deci-

sion in *Rubes* shows that the Iowa Supreme Court was aware of this court's attempt in *Utica Mutual Insurance* to clarify the causes of action and defenses to which fraudulent misrepresentation can give rise, and this court had identified *Higgins* as an exemplar of use of fraudulent misrepresentation as an affirmative defense.

tation in an action at law for breach of contract to prove both "knowledge of falsity" and "intent to deceive." As this court explained, one of the principle distinctions between "misrepresentation" claims at law and in equity is precisely whether or not the party asserting such a claim is required to prove these "scienter" elements. *See Utica Mut. Ins. Co.*, 892 F.Supp. at 1195. Just as formulation of the "intent" element in an equity action as "intent to induce the plaintiff to act or refrain from acting" is "proper in an equity action, because knowledge of falsity is not at issue, but whether misrepresentations induced the complaining party to contract is at issue," *id.*, and "injecting an 'intent to deceive' element in a rescission case would reintroduce the concept of scienter, 'making the elimination of this requirement in equity cases illusory,'" *see Rubes*, 642 N.W.2d at 269 (quoting *Hyler*, 548 N.W.2d at 872), *removal* of the "knowledge of falsity" and "intent to deceive" elements from the affirmative defense of misrepresentation in an action at law for breach of contract would improperly *remove* the concept of scienter from actions at law, where it is proper for the jury to consider it. The court agrees with the implicit conclusion of the Iowa Supreme Court in *Higgins* that there is, or should be, some symmetry between the elements of a *claim* of fraudulent misrepresentation in an action at law and an *affirmative defense* based on misrepresentation in an action at law for breach of contract. *See Higgins*, 319 N.W.2d at 237. While AGAC could have asserted a claim for equitable rescission of the insurance contracts based on misrepresentation in a declaratory judgment action sounding in equity, *cf. Rubes*, 642 N.W.2d at 268, it did not do so; instead, AGAC chose to assert misrepresentation only as a defense to Mrs. Dishman's action at law for breach of contract, and must, therefore, prove the elements of such a misrepresentation claim/defense in

an action at law, including "knowledge of falsity" and "intent to deceive."

In short, *Rubes* simply involves a cause of action different from the one presented here, because it involved a counterclaim for equitable rescission based on misrepresentation in an equitable proceeding, not an affirmative defense based on misrepresentation in an action at law for breach of contract. Thus, *Rubes* is not controlling on the elements of AGAC's affirmative defense. Nor is there any reason to believe that *Higgins* is a misstatement of the elements of the affirmative defense of misrepresentation in this action at law for breach of contract. Therefore, the court reaffirms its conclusion that the elements that AGAC must prove to prevail on its affirmative defense are the following: (1) the applicant made a false representation or non-disclosure in connection with his application for insurance; (2) the representation or non-disclosure was material to the transaction, that is, the representation or non-disclosure materially affected the risk assumed by the insurer; (3) the applicant made the representation with actual knowledge of its falsity or reckless disregard of whether it was true or false or the applicant knowingly withheld material information; (4) the applicant intended to deceive the insurer; (5) the insurer relied on the applicant's representation or non-disclosure in issuing the insurance contract; and (6) the insurer would not have issued the insurance contract if it had known the true facts. *Higgins*, 319 N.W.2d at 236–37.

■ Finally, the court reaffirms its conclusion that there is an absence of any genuine issue of material fact only as to the first of these elements, and that the "falsity" of Mr. Dishman's representations that he was in "good health" is thus the only element of AGAC's affirmative defense that is established as a matter of

law. For the reasons stated in the court's February 19, 2002, ruling on the cross-motions for summary judgment, the elements of "knowledge of falsity," "intent to deceive," "materiality," "reliance," and "would not have issued" all remain at issue for trial. In addition, to the extent that *Rubes* might be instructive on the elements of "reliance" and "would not have issued"—*i.e.*, to the extent that those elements are analogous to the "justifiable reliance" element of the equitable claim at issue in *Rubes*—Mrs. Dishman's case would appear to present precisely the scenario that the court in *Rubes* concluded was *not* presented in that case. In *Rubes*, the insured was asked whether he had ever received treatment for alcoholism and whether he had ever suffered from or been treated for several other specified ailments. *See id.* at 5, 9–10. The court held that these questions asked "for objectively factual answers" or "straightforward answers to known past information," which the court distinguished from questions that asked the insured to "speculate about the general state of his health." *See id.* at 11 (citing *Dezsi v. Mutual Ben. Health & Accident Ass'n*, 255 Iowa 1027, 1034–35, 125 N.W.2d 219, 223 (1963), and *Service Life Insurance Company of Omaha, Nebraska v. McCullough*, 234 Iowa 817, 828, 13 N.W.2d 440, 444–45 (Iowa 1944), as holding that a representation about the general state of the insured's health did not constitute a "warranty," but was, at best, a representation that may, in good faith, be truthful). The court in *Rubes* concluded that, because the insurer's questions "sought straightforward answers to known past information," the insured "was justified in relying on the answers given by [the insured] and plainly relied on them to its detriment in extending health insurance coverage to him." *Id.* Thus, *Rubes* confirms that the speculative nature of the answer required of the insured goes to the insured's knowledge of falsity and intent to

deceive, and also goes to whether or not the insurer's reliance on such statements was justified. The *Rubes* decision suggests, further, that determination of these elements as a matter of law is only appropriate when the questions asked by the insured do not call for the sort of speculation about "good health" required by AGAC's application, but for "objectively factual answers." *See id.* Therefore, *Rubes* supports rather than undermines this court's denial of summary judgment as to the "materiality," "knowledge of falsity," "intent to deceive," "reliance," and "would not have issued" elements of AGAC's affirmative defense.

### B. Other Trial–Related Matters

#### 1. AGAC's motion to set the order of proof for trial

■ On March 27, 2002, AGAC also filed a motion for the court to set the order of proof for trial, allowing AGAC to present its evidence of misrepresentation *first*. AGAC argues that this order of proof is appropriate, because, pursuant to the February 19, 2002, summary judgment ruling, AGAC's affirmative defense is the only matter remaining for trial. The court deems it appropriate to consider this motion at this time, as well, even though Mrs. Dishman has not yet responded to this motion either.

The court reads AGAC's motion to be a concession that, in the absence of success on its misrepresentation defense, Mrs. Dishman has proved her breach-of-contract claim, leaving AGAC's misrepresentation defense as the only matter properly in dispute. Such a concession, of course, is in accord with the court's conclusions in its summary judgment ruling that "[t]he parties nowhere appear to dispute [the elements of Mrs. Dishman's breach-of-contract claim], [and] '[t]he lack of such a dispute would seem to establish Mrs. Dish-

man's breach-of-contract claim as a matter of law, leaving at issue only AGAC's affirmative defense of misrepresentation by Mr. Dishman in the applications for insurance.'" *See Dishman,* 187 F.Supp.2d at 1085.

█ When asked in *Anheuser–Busch, Inc. v. John Labatt, Ltd.,* 89 F.3d 1339 (8th Cir.1996), *cert. denied,* 519 U.S. 1109, 117 S.Ct. 944, 136 L.Ed.2d 833 (1997), to review a trial court's denial of a motion to set the order of proof for trial and to "realign" the parties, the Eighth Circuit Court of Appeals explained,

> A district court has wide discretion to set the order of proof at trial. *Skogen v. Dow Chemical Co.,* 375 F.2d 692, 704, 706 (8th Cir.1967). Ordinarily, the trial court extends the privilege of opening and closing the case to the party that has the burden of proof. *Martin v. Chesebrough–Pond's, Inc.,* 614 F.2d 498, 501 (5th Cir.1980) (*per curiam*).

*Anheuser–Busch, Inc.,* 89 F.3d at 1344. In *Anheuser–Busch, Inc.,* the court concluded that the trial court had not abused its discretion by denying the defendant's motion, where each party bore the burden of proof on remaining claims, and disposition of one claim did not necessarily dispose of others. *See id.*

Here, the circumstances are different, because Mrs. Dishman's success or failure on her claim is ultimately dependent upon AGAC's success or failure on its affirmative defense. Under these circumstances, it is appropriate to afford AGAC the opportunity to open and close the case, as the party bearing the burden of proof on the only remaining question. *See id.* However, the court will not simply "realign" the parties, *see id.,* and AGAC did not ask the court to do so. Rather, the court will instruct the jury that AGAC bears the burden of proof (by the preponderance of clear, convincing, and satisfactory evidence) on its "affirmative defense" of misrepresentation to Mrs. Dishman's claim of breach of contract, and that, if AGAC fails to prove its affirmative defense, Mrs. Dishman is entitled to damages in the amount of the death benefits payable under the credit life insurance policies on her breach-of-contract claim.

Therefore, AGAC's motion to set the order of proof for trial will be granted to allow AGAC, as the party bearing the burden of proof on the only issues remaining, to open and close the case.

### 2. Location of trial

Although this is a Central Division case, which could be tried in Fort Dodge, Iowa, the court finds *sua sponte* that the courtroom facilities available in Sioux City, Iowa, are so much superior to those available in Fort Dodge as to improve materially the presentation of the parties' case to a jury. Moreover, the court's schedule is such that trial in Fort Dodge would materially inconvenience the court. Therefore, trial in this matter, which is set to begin on April 15, 2002, will be held in Sioux City, Iowa.

### III. CONCLUSION

Upon consideration of AGAC's submissions and the record in this case, the court concludes as follows:

1. AGAC's April 1, 2002, motion to reconsider, alter, or amend portions of the court's February 19, 2002, ruling on cross-motions for partial summary judgment is **denied.** The court reaffirms its conclusions regarding the elements of AGAC's affirmative defense and which of those elements present genuine issues of material fact for trial.

2. AGAC's March 27, 2002, motion to set the order of proof for trial is **granted.** As the party bearing the burden of proof on the only issues remaining for trial, AGAC shall open and close the case.

3.   **Trial in this matter,** which is set to begin on April 15, 2002, **will be held in the third floor courtroom at the Federal Building and Courthouse in Sioux City, Iowa.** Counsel for the parties should contact the undersigned's secretary if they would like to arrange for a training session on the courtroom technology available in the third floor courtroom at the Sioux City Courthouse.

**IT IS SO ORDERED.**